**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| DIGITAL SECURITY SYSTEMS CORPORATION, LLC, <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG ELECTRONICS AMERICA, INC.; BEST BUY CO., INC.; D&M HOLDINGS, INC.; DENON ELECTRONICS (USA), LLC; FUNAI ELECTRIC CO., LTD.; FUNAI CORPORATION, INC.; LG ELECTRONICS U.S.A., INC.; MATSUSHITA INDUSTRIAL ELECTRIC CO., LTD.; PANASONIC CORPORATION OF NORTH AMERICA; KONINKLIJKE PHILIPS ELECTRONICS N.V.; PHILLIPS ELECTRONICS NORTH AMERICA CORPORATION; PIONEER CORPORATION; PIONEER ELECTRONICS (USA), INC.; SHARP CORPORATION; and SHARP ELECTRONICS CORPORATION, <br><br> Defendants. | CIVIL ACTION NO. 2:08-CV-316 (DF-CE) <br><br> Jury Trial Demanded |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
<u>**MOTION TO DISMISS**</u>

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for Defendants*
*Sharp Corporation &*
*Sharp Electronics Corporation*

December 2, 2008

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 2

ARGUMENT ..................................................................................................................... 2

I.      DSS Does Not Have Standing to Sue ............................................................... 2

        A.      Standing to Sue Rests with the Owner of a Patent; DSS Is Not the
                Patent Owner .......................................................................................... 2

        B.      DSS Has Not Demonstrated That It Is, in Effect, the Patent Owner,
                and Therefore DSS Lacks Standing to Sue ............................................ 3

II.     The Complaint Should Be Dismissed Under Federal Rule of Civil Procedure
        12(b)(1) Because DSS Does Not Have Standing to Sue ................................... 6

III.    The Complaint Should Be Dismissed Under Federal Rule of Civil Procedure
        12(b)(7) for Failure to Join a Necessary and Indispensable Party .................... 7

        A.      Failure to Join a Necessary and Indispensable Party Requires
                Dismissal ................................................................................................ 7

        B.      Patent Owners Are Necessary and Indispensable Parties to Patent
                Infringement Suits .................................................................................. 8

CONCLUSION ................................................................................................................ 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

A.L. Smith Iron Co. v. Dickson,
    141 F.2d 3 (2d Cir. 1944) ................................................................................. 9
Abbott Labs. v. Diamedix Corp.,
    47 F.3d 1128 (Fed. Cir. 1995) ..................................................................... 5, 8
Aspex Eyewear, Inc. v. Miracle Optics, Inc.,
    434 F.3d 1336 (Fed. Cir. 2006) ................................................................... 3, 4
Brown v. Pac. Life Ins. Co.,
    462 F.3d 384 (5th Cir. 2006) ......................................................................... 8
Bushberger v. Protecto Wrap Co., Index No. 07-CV-8,
    2008 WL 725189 (E.D. Wis. Mar. 17, 2008) ................................................ 6
Calgon Corp. v. Nalco Chem. Co.,
    726 F. Supp. 983 (D. Del. 1989) .............................................................. 3, 10
Chatham Condo. Ass'ns v. Century Village, Inc.,
    597 F.2d 1002 (5th Cir. 1979) ....................................................................... 7
Colida v. Motorola, Inc.,
    77 F. App'x 516 (Fed. Cir. 2003) ................................................................. 6
Erbamont Inc. v. Cetus Corp.,
    720 F. Supp. 387 (D. Del. 1989)..................................................................... 8
Hill Phoenix, Inc. v. Systematic Refrigeration, Inc.,
    117 F. Supp. 2d 508 (E.D. Va. 2000) ............................................................ 3
HS Res., Inc. v. Wingate,
    327 F.3d 432 (5th Cir. 2003) ................................................................... 7, 10
Indep. Wireless Tel. Co. v. Radio Corp. of Am.,
    269 U.S. 459 (1926)................................................................................... 8, 9
Int'l Gamco, Inc. v. Multimedia Games, Inc.,
    504 F.3d 1273 (Fed. Cir. 2007) ................................................................... 3, 4
Intellectual Prop. Dev., Inc. v. TCI Cablevision, Inc.,
    248 F.3d 1333 (Fed. Cir. 2001) ................................................................... 4, 6
Interstate Circuit, Inc. v. United States,
    306 U.S. 208 (1939)....................................................................................... 5
Krim v. pcOrder.com, Inc.,
    402 F.3d 489 (5th Cir. 2005) ......................................................................... 7
Madey v. Duke Univ.,
    307 F.3d 1351 (Fed. Cir. 2002) ..................................................................... 6
Mentor H/S, Inc. v. Med. Device Alliance, Inc.,
    240 F.3d 1016 (Fed. Cir. 2001) ............................................................. 4, 5, 6
Montez v. Dep't of the Navy,
    392 F.3d 147 (5th Cir. 2004) ......................................................................... 7
New Orleans & Gulf Coast Ry. Co. v. Barrois,
    533 F.3d 321 (5th Cir. 2008) ......................................................................... 6

*Pfizer Inc. v. Elan Pharm. Research Corp.*,
812 F. Supp. 1352 (D. Del. 1993) .................................................................. 3, 4
*Prima Tek II, LLC v. A-Roo Co.*,
222 F.3d 1372 (Fed. Cir. 2000) ................................................................. 3, 5, 6
*Pulitzer-Polster v. Pulitzer*,
784 F.2d 1305 (5th Cir. 1986) ....................................................................... 8
*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) ........................................................................ 6
*Refac Int'l Ltd. v. Mastercard Int'l, F.W.*,
758 F. Supp. 152 (S.D.N.Y. 1991) ......................................................... 4, 6, 8
*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
427 F.3d 971 (Fed. Cir. 2005) ............................................................ 2, 3, 4, 6
*SIG Swiss Indus. Co. v. Fres-Co Sys. U.S.A., Inc.*, Index No. 91-0699,
1991 U.S. Dist. LEXIS 5452 (E.D. Pa. Apr. 23, 1991) .......................................... 4
*Suprex Corp. v. Lee Scientific, Inc.*,
660 F. Supp. 89 (W.D. Pa. 1987) ................................................................. 8, 9
*Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*,
944 F.2d 870 (Fed. Cir. 1991) ..................................................................... 3, 9
*Water Techs Corp. v. Calco, Ltd.*,
576 F. Supp. 767 (N.D. Ill. 1983) ............................................................... 9, 10
*Waterman v. Mackenzie*,
138 U.S. 252 (1891) .................................................................................... 6

**Statutes**

35 U.S.C. § 100(d) ............................................................................................ 3
35 U.S.C. § 281 .................................................................................................. 3

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................. 1, 6, 7, 10
Fed. R. Civ. P. 12(b)(7) ............................................................. 1, 2, 7, 10
Fed. R. Civ. P. 19 ........................................................................ 1, 7, 8
Fed. R. Civ. P. 19(a) ........................................................................ 8
Fed. R. Civ. P. 19(b) ................................................................... 8, 10

## TABLE OF ABBREVIATIONS

'780 Patent ..............................................................................................U.S. Patent No. 6,052,780

D.I. ............................................................................................................................Docket Index

DSS ................................................................................ Plaintiff Digital Security Systems, LLC

Ex. [# ___] .................................................................................... Exhibit attached hereto

Ex. [Letter ___]........................................... Exhibit attached to the Declaration of Anne Champion

OSS ..........................................................................................Open Security Solutions, LLC

Patent-in-Suit ..................................................................................... The '780 Patent

USPTO .......................................................................United States Patent and Trademark Office

Defendants[1] move to dismiss Plaintiff DSS's Complaint under Rules 12(b)(1) and 12(b)(7) of the Federal Rules of Civil Procedure.  Simply put, DSS does *not* have standing to bring this suit because it is an exclusive licensee, not the patent owner, and has not otherwise demonstrated standing.

## PRELIMINARY STATEMENT

This suit should be dismissed under Rule 12(b)(1) for lack of jurisdiction because DSS, as the exclusive licensee of the '780 Patent, does not have standing to sue in its own name.  In addition, this suit should be dismissed under Rule 12(b)(7) because the owner of the '780 Patent is a necessary and indispensable party to this suit within the meaning of Rule 19, but has not been made a party here.

DSS states in its Complaint that it is merely the exclusive licensee – not the owner – of the '780 Patent.  Exclusive licensees do not have standing to sue for patent infringement unless the exclusive licensee is in effect an assignee of the patent because it has been granted "all substantial rights" in the patent.  DSS makes the conclusory assertion in its Complaint that it has "all substantive rights" to the '780 Patent, but does not support this assertion with facts or any written documentation (i.e., a copy of the applicable agreement).  In an attempt to avoid motion practice, Defendants have repeatedly asked counsel for DSS for a copy of that license agreement, but DSS has refused to produce it.  As the party seeking to bring suit here, it is DSS's burden to show that this Court has subject matter jurisdiction over this action.  DSS's conclusory assertions in the Complaint are insufficient to meet this burden.  Accordingly, this suit should be dismissed under Rule 12(b)(1).

---

[1] "Defendants" are: Sharp Corporation; Sharp Electronics Corporation; Best Buy Co., Inc.; D&M Holdings Inc.; Denon Electronics (USA) LLC; Funai Electric Co., Ltd.; Funai Corporation, Inc.; LG Electronics, Inc.; LG Electronics U.S.A., Inc.; Matsushita Industrial Electric Co., Ltd.; Panasonic Corporation of North America; Koninklijke Philips Electronics N.V.; Phillips Electronics North America Corporation; Pioneer Corporation; Pioneer Electronics (USA) Inc.; Samsung Electronics Co., Ltd.; and Samsung Electronics America, Inc.

Furthermore, the patent owner is a necessary and indispensable party to this suit for patent infringement.  Accordingly, if DSS is unable to join the patent owner here, this suit must be dismissed under Rule 12(b)(7) for failure to join an indispensable party.

**STATEMENT OF FACTS**

DSS brought this suit on August 11, 2008, alleging that Blu-ray disc players sold or manufactured by various Defendants infringe the '780 Patent.  (D.I. 1 ¶ 22-23).  DSS does *not* claim ownership over the '780 Patent.  Instead, DSS alleges that it is the exclusive licensee of the '780 Patent.[2]  This allegation is unsupported.  (*Id*. ¶ 22).  DSS does not attach a copy of the license agreement to the Complaint, and it has refused to provide a copy in response to Defendants' repeated requests.  (Exs. F, G, H and I).

The Complaint further fails to identify the owner of the '780 Patent much less name the owner as a party.  (*See* D.I. 1).  According to USPTO records, however, the '780 Patent is owned by OSS.  (Exs. C and D).  DSS has since indicated that OSS is the owner of the '780 Patent. (Ex. H).  The USPTO records for the '780 Patent do not show that any rights have been transferred from OSS to DSS or anyone else, much less rights sufficient for DSS to sue in its own name.  (Ex. C).

**ARGUMENT**

I.     **DSS Does Not Have Standing to Sue**

    A.     **Standing to Sue Rests with the Owner of a Patent;
              DSS Is Not the Patent Owner**

Standing to sue is a threshold jurisdictional requirement in every federal action.  *See, e.g.*, *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975-6 (Fed. Cir. 2005).  A plaintiff must satisfy, not only Article III's constitutional standing requirement, but also the "prudential"

---

[2] DSS states in the Complaint:  "DSS is the exclusive licensee of the '780 patent with all substantive rights in and to the '780 patent, including the sole and exclusive right to prosecute this action and enforce the '780 patent against infringers, and to collect damages for all relevant times."  (D.I. 1 ¶ 22).

2

standing requirement of 35 U.S.C. § 281, which provides that only the "patentee" or its "successors in title" (i.e., assignees) have the right to bring infringement suits in federal court.[3] *See, e.g.*, *Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1276 (Fed. Cir. 2007); *Prima Tek II, LLC v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000).  Thus, as a general rule, "the owner of a patent or the owner's assignee can commence an action for patent infringement, but a licensee alone cannot."[4]  *Sicom Sys.*, 427 F.3d at 976 (citation and internal quotations omitted); *see also Pfizer Inc. v. Elan Pharm. Research Corp.*, 812 F. Supp. 1352, 1356 (D. Del. 1993) ("[A] mere licensee does not have standing to sue for patent infringement in its own name").

Because DSS admits that it does not own the '780 Patent (*see* Statement of Facts, *supra*), it must join the patent owner in order to create standing.  *See, e.g.*, *Prima Tek*, 222 F.3d at 1377; *Hill Phoenix, Inc. v. Systematic Refrigeration, Inc.*, 117 F. Supp. 2d 508, 511 (E.D. Va. 2000) ("[A]n exclusive licensee has been given sufficient rights in a patent to obtain standing, *but only if* the patent owner is joined in the lawsuit") (emphasis added); *Calgon Corp. v. Nalco Chem. Co.*, 726 F. Supp. 983, 989 (D. Del. 1989) ("It is appropriate to describe the requirement that a patent owner be joined in order for a licensee to assert an infringement as a standing requirement").

### B.   DSS Has Not Demonstrated That It Is, in Effect, the Patent Owner, and Therefore DSS Lacks Standing to Sue

There is a narrow exception to the general rule that exclusive licensees lack standing to sue for patent infringement.  An exclusive licensee can bring suit for patent infringement in its

---

[3]  35 U.S.C. § 100(d) states:  "The word 'patentee' includes not only the patentee to whom the patent was issued but also the successors in title to the patentee."

[4]  "The policy underlying the requirement to join the owner when an exclusive licensee brings suit is to prevent the possibility of two suits on the same patent against a single infringer." *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991); *see also Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1343 (Fed. Cir. 2006).

own name if the license transfers "all substantial rights to the patent at issue" to the licensee. *See, e.g., Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1340 (Fed. Cir. 2006). The "all substantial rights" exception is extremely difficult for a plaintiff to meet.  The transfer must be so complete that it amounts to an assignment, which requires "an agreement effectively transfer[ring] the entire bundle of rights residing in a patent."  *Refac Int'l Ltd. v. Mastercard Int'l, F.W.*, 758 F. Supp. 152, 155 (S.D.N.Y. 1991) (citation and internal quotations omitted); *see also Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001).

"[A]n exclusive licensee is not an assignee if the licensor has retained any rights in the patent at all."  *SIG Swiss Indus. Co. v. Fres-Co Sys. U.S.A., Inc.*, Index No. 91-0699, 1991 U.S. Dist. LEXIS 5452, at *5 (E.D. Pa. Apr. 23, 1991) (Ex. 1); *see also Pfizer Inc.*, 812 F. Supp. at 1371 ("[T]he failure to assign all rights under the patent bars a claim for infringement unless the owner is made party to the suit") (citation and internal quotations omitted).  It is therefore unsurprising that the Federal Circuit routinely holds that licensees lack sufficient rights to sue in their own names.  *See Int'l Gamco*, 504 F.3d at 1279-80 (holding that "exclusive enterprise licensee" lacked sufficient rights to sue in its own name); *Aspex Eyewear*, 434 F.3d at 1343 (holding that license with fixed termination date rendered the transferee a mere licensee, since the transferee "never was the effective owner of the patent"); *Sicom Sys., Ltd.*, 427 F.3d at 980 (holding that patent owner was a necessary party where owner retained the right to sue for "non-commercial" infringement); *Intellectual Prop. Dev., Inc. v. TCI Cablevision, Inc.*, 248 F.3d 1333, 1344-45 (Fed. Cir. 2001) (holding that agreement did not confer all substantial rights where patent owner could prevent licensee from assigning its rights to a third party and was required to consent to infringement suits under some circumstances); *Mentor H/S, Inc.*, 240 F.3d at 1018 (holding *sua sponte* that license agreement was insufficient to confer standing where patent owner retained right to supervise and control licensee's product development, right to sue for infringement, and obligation to pay the maintenance fees for the patent); *Prima Tek*, 222 F.3d at 1382 (holding that agreement did not confer all substantial rights because it required licensee to sublicense to specific entity); *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1133 (Fed. Cir.

1995) (holding that patent owner was a necessary party where the owner retained right to prosecute an infringement action if the licensee declined).

DSS nakedly asserts in the Complaint that it has obtained "all substantive rights in and to the '780 patent . . . ."  (D.I. 1 ¶ 22).[5]  However, "[t]he party asserting that it has all substantial rights in the patent must produce . . . written instruments documenting the transfer of proprietary rights."  *Mentor H/S, Inc.*, 240 F.3d at 1017 (citations and internal quotations omitted) (finding *sua sponte* that exclusive licensee lacked standing to bring suit).  The court "must ascertain the intention of the parties and examine the substance of what was granted," not the labels adopted by the contracting parties.  *See, e.g.*, *Prima Tek*, 222 F.3d at 1378 (citation omitted).  Even though DSS has the burden to show that this court has jurisdiction (*see* Section II, *infra*), DSS did *not* plead facts to support its assertion that it has all "substantive rights" in the patent, did *not* attach the license to its Complaint, did *not* provide a copy of the license in response to Defendants' requests, and did *not* record its rights with the USPTO.[6]  (*See* Statement of Facts*, supra*).  DSS, therefore, has failed to demonstrate that it stands in the owner's shoes and thus does not have standing.[7]

---

[5]  It is unclear whether DSS intentionally used the phrase "all substant*ive* rights" in its Complaint (D.I. 1 ¶ 22), to distinguish its allegation from the "all substant*ial* rights" test employed by courts when determining whether a license grants a licensee sufficient rights to confer standing.  But even if DSS's phrasing was intended as the equivalent of "all substantial rights," DSS cannot meet its burden with such conclusory allegations.

[6]  Where, as here, DSS refused to provide a copy of the agreement in response to multiple requests (Exs. F, G, H and I), it is reasonable to infer that the agreement would not support DSS's claim of sufficient rights to sue alone.  *See Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 226 (1939) ("The production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse.  Silence then becomes evidence of the most convincing character.") (citations omitted).

[7]  An additional exception exists whereby an exclusive licensee may have standing to sue in its own name in "extraordinary circumstances."  *See Mentor H/S*, 240 F.3d at 1017; *see also Intellectual Prop. Dev.*, 248 F.3d at 1348.  However, this exception is very narrow, and only applies in unusual circumstances, such as where the alleged infringer is the owner of the patent.  *See Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891) ("[S]uit must be brought in [the owner's] name, and never in the name of the licensee alone, unless that is necessary to

[Footnote continued on next page]

## II.   The Complaint Should Be Dismissed Under Federal Rule of Civil Procedure 12(b)(1) Because DSS Does Not Have Standing to Sue

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for lack of subject matter jurisdiction, including where the plaintiff lacks standing to bring suit, "a threshold jurisdictional requirement in every federal action." *Sicom Sys.*, 427 F.3d at 980 (affirming dismissal because licensee lacked sufficient patent ownership rights); *see also Prima Tek*, 222 F.3d at 1382 (holding that district court had erred in not dismissing patent infringement suit for lack of standing); *Bushberger v. Protecto Wrap Co.*, Index No. 07-CV-8, 2008 WL 725189, at *5 (E.D. Wis. Mar. 17, 2008) (dismissing complaint for patent infringement because plaintiff failed to join all co-owners) (Ex. 2); *Refac*, 758 F. Supp. at 157 (finding licensee lacked standing to sue for patent infringement alone).

DSS, as the party asserting jurisdiction, has the burden of proving that this Court has jurisdiction by a preponderance of the evidence. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."); *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 338 (5th Cir. 2008) (affirming dismissal for lack of jurisdiction). Furthermore, in the Fifth Circuit,[8] when a defendant makes a factual challenge to jurisdiction under Rule 12(b)(1), "no presumptive truthfulness attaches to the plaintiff's allegations, and the court can decide disputed issues of material fact in order to determine whether or not it has jurisdiction to hear the case." *Montez v. Dep't of the Navy*, 392 F.3d 147, 149 (5th Cir. 2004). In deciding a Rule 12(b)(1) motion, the "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the

---

[Footnote continued from previous page]
prevent an absolute failure of justice, as where the patentee is the infringer, and cannot sue himself"). DSS has not alleged, much less demonstrated, any extraordinary circumstances here.

[8] Procedural matters in patent infringement actions that are not specific to patent law are governed by the law of the regional circuit. *See Madey v. Duke Univ.*, 307 F.3d 1351, 1358 (Fed. Cir. 2002); *accord Colida v. Motorola, Inc.*, 77 F. App'x 516, 517 (Fed. Cir. 2003) (per curiam) (applying regional circuit law to Rule 12(b)(1) motion).

case." *Id.*; *see also Chatham Condo. Ass'ns v. Century Village, Inc.*, 597 F.2d 1002, 1012 (5th Cir. 1979) ("[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims").[9]

DSS has not shown that it has sufficient rights in the '780 Patent to bring suit in its own name.  DSS is *not* the patent owner (*see* Section I.A, *supra*), nor has it alleged facts, let alone provided evidence or documentation to support its conclusory assertion that it has "all substantive rights" in the '780 Patent such that it has standing to sue.  (*See* Section I.B, *supra*).  Accordingly, DSS has not met its burden to show that it has sufficient rights in the '780 Patent to maintain standing alone.

III.    **The Complaint Should Be Dismissed Under Federal Rule of Civil Procedure 12(b)(7) for Failure to Join a Necessary and Indispensable Party**

   A.    **Failure to Join a Necessary and Indispensable Party Requires Dismissal**

Alternatively, dismissal is required under Rule 12(b)(7) of the Federal Rules of Civil Procedure, which authorizes dismissal for "failure to join a party under Rule 19."  Rule 19 of the Federal Rules of Civil Procedure in turn requires joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue . . . [and] provides for the dismissal of litigation that should not proceed in the absence of parties that cannot be joined."  *HS Res., Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003); Fed. R. Civ. P. 19.  If an absent party qualifies as "necessary" under Rule 19(a), then "the relevant inquiry is whether in equity and good conscience the action shall proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable [under Rule 19(b)]."  *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 394 (5th Cir. 2006) (internal quotations omitted).  If "the

---

[9] A court may dismiss for lack of subject matter jurisdiction based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of the disputed facts."  *See, e.g.*, *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (citation and internal quotations omitted).

litigation should not proceed without absent persons, the federal suit should be dismissed."
*Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986).

### B.   Patent Owners Are Necessary and Indispensable Parties to Patent Infringement Suits

When an exclusive licensee sues for patent infringement, the patent owner is a necessary

party under Rule 19(a) "because the patent-holder is still the real party with respect to the

validity of the patent." *Erbamont Inc. v. Cetus Corp.*, 720 F. Supp. 387, 393 (D. Del. 1989); *see*

*also Abbott Labs.*, 47 F.3d at 1132 (finding transfer of fewer than all substantial rights to

exclusive licensee rendered patent owner a "necessary party to an infringement action brought by

the licensee"); *Suprex Corp. v. Lee Scientific, Inc.*, 660 F. Supp. 89, 93 (W.D. Pa. 1987) (finding

patent owner a necessary and indispensable party).   Patent owners are also indispensable parties

within the meaning of Rule 19(b).   *See Refac*, 758 F. Supp. at 158 (dismissing patent

infringement suit under Rule 19 because patent owner was a necessary and indispensable party);

*accord Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 468 (1926) ("[T]he

presence of the owner of the patent as a party is indispensable, not only to give jurisdiction under

patent laws, but also in most cases to enable the alleged infringers to respond in one action to all

claims of infringement for his act").   Rule 19 sets out four factors that courts consider when

determining whether a party is indispensable:

> (1) the extent to which a judgment rendered in the person's absence might
> prejudice that person or the existing parties; (2) the extent to which any prejudice
> could be lessened or avoided by: (a) protective provisions in the judgment;
> (b) shaping the relief; or (c) other measures; (3) whether a judgment rendered in
> the person's absence would be adequate; and (4) whether the plaintiff would have
> an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).   An evaluation of these factors confirms that patent owners are

indispensable parties to suits for patent infringement.

*First*, the patent owner might be prejudiced by judgment in its absence if the patent were

devalued, for example, by a finding of invalidity.   *See Suprex*, 660 F. Supp. at 93; *A.L. Smith*

*Iron Co. v. Dickson*, 141 F.2d 3, 9 (2d Cir. 1944) ("[E]very patent owner has an interest in

keeping the reputation of his patent from the stain of a judgment of invalidity – an interest which

it is proper for a court to recognize.") (L. Hand, J.).  Non-joinder of the patent owner might also prejudice the defendant, who should not be required to litigate seriatim.  "The presence of the owner of the patent as a party is *indispensable*, not only to give jurisdiction under the patent laws, but also in most cases to enable the alleged infringers to respond in one action to all claims of infringement for his act, and thus to either defeat all claims in the one action, or by satisfying one adverse decree to bar all subsequent actions."[10]  *See Indep. Wireless Tel.*, 269 U.S. at 468 (emphasis added); *cf. Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991) ("The policy underlying the requirement to join the owner when an exclusive licensee brings suit is to prevent the possibility of two suits on the same patent against a single infringer").

*Second*, the burden is on the plaintiff to suggest how relief can be shaped to lessen or avoid exposing a defendant to "suffering multiple liability if [another party] were to relitigate the issues before the court and if it were not barred by the doctrine of collateral estoppel."  *Water Techs Corp. v. Calco, Ltd.*, 576 F. Supp. 767, 770 (N.D. Ill. 1983).

*Third*, because of the threat of prejudice and multiple lawsuits, judgment in the absence of the patent owner would not be adequate.  *See Water Techs.*, 576 F. Supp. at 770 (holding that when a patent owner is not present, the court must "consider the propriety of granting incomplete relief to the present parties" (citation omitted)).  Because "patent suits most often consume a great amount of court time due to their complexity and because there is a great public interest in determining the status of a patent once and for all, patent controversies, if possible, should be settled in a single action."  *Water Techs.*, 576 F. Supp. at 771 (citations omitted).

---

[10]  The prejudice to a defendant in having to defend an improper suit for patent litigation is great.  For example, the 2007 American Intellectual Property Law Association Economic Survey reports that the average cost of defending a patent infringement action involving a single patent through trial (where over $1 million is at risk) was over $3.0 million and could exceed $5.0 million.  (Ex. J).

*Fourth*, the Court must "inquire into 'whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.'"  *Id.* (citing Fed. R. Civ. P. 19(b)).  OSS, the purported patent owner, is subject to process in at least the District of Delaware, where it is a registered LLC, and the District of Massachusetts, where it has its principal place of business.  (*See* Exs. A and B).  Accordingly, DSS is not without a jurisdiction in which to proceed (i.e., not without a remedy) if this suit is dismissed.

*   *   *

Because the patent owner is both a necessary and indispensable party, OSS, as the owner, must be joined if it is subject to process in this district; if not, then dismissal is appropriate under Rule 12(b)(7).  *See Calgon Corp.*, 726 F. Supp. at 990; *HS Res.*, 327 F.3d at 438.

**CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed without prejudice under

Rules 12(b)(1) and 12(b)(7) of the Federal Rules of Civil Procedure.


Dated: December 2, 2008

Respectfully submitted,

/s/     *Eric S. Walters*
Karl J. Kramer
Eric S. Walters
Jeffrey E. Danley
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 813-5600
Facsimile: (650) 494-0792
ewalters@mofo.com
kkramer@mofo.com
jdanley@mofo.com

*Attorneys for Defendants D&M Holdings Inc.,
Denon Electronics (USA) LLC, Funai Electric
Co., Ltd., and Funai Corporation, Inc.*

/s/     *Benjamin Hershkowitz*
Josh A. Krevitt, N.Y. Bar 2568228
Lead Attorney
Benjamin Hershkowitz, N.Y. Bar No. 2600559
Richard Koehl, N.Y. Bar No. 4193694
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
jkrevitt@gibsondunn.com
bhershkowitz@gibsondunn.com
rkoehl@gibsondunn.com

*Attorneys for Defendants Sharp Corporation
and Sharp Electronics Corporation*

/s/     *Emmett J. McMahon*
Emmett J. McMahon
Heather M. McElroy (*pro hac vice pending*)
ROBINS, KAPLAN, MILLER & CIRESI LLP
800 LaSalle Avenue
Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
ejmcmahon@rkmc.com
hmmcelroy@rkmc.com

Ricky L. Faulkner
RICKEY L. FAULKNER, P.C.
P.O. Box 3367
Longview, TX. 75606-3367
Telephone: (903) 248-8246
Facsimile: (903) 248-8249
rick@faulknerlawoffice.com

*Attorneys for Defendant Best Buy Co., Inc.*

/s/     *Michael V. Solomita*
Michael V. Solomita
Daniel Ebenstein
Joseph Casino
Nathan Weber
AMSTER ROTHSTEIN & EBENSTEIN LLP
90 Park Ave.
New York, NY 10016
Telephone: (212) 336-8000
msolomita@arelaw.com
debenstein@arelaw.com
jcasino@arelaw.com
nweber@arelaw.com

Melvin R. Wilcox, III
YARBROUGH – WILCOX, PLLC
100 E. Ferguson, Suite 1015
Tyler, TX. 75702
Telephone: (903) 595-1133
Facsimile: (903) 595-0191
mrw@yw-lawfirm.com

*Attorneys for Defendants Matsushita Industrial
Electrical Co., Ltd. and Panasonic
Corporation of North America*

11

/s/      *Peter M. Brody*

Peter M. Brody
Ryan K. Dickey
Ann D. Wiles
ROPES & GRAY LLP
One Metro Center
700 12th St. NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 508-4600
Facsimile: (202) 508-4650
peter.brody@ropesgray.com
ryan.dickey@ropesgray.com
ann.wiles@ropesgray.com

Damon Young
YOUNG, PICKETT & LEE
4122 Texas Blvd
P.O. Box 1897
Texarkana, TX 75504-1897
Telephone: (903) 794-1303
Facsimile: (903) 792-5098
dyoung@youngpickettlaw.com

*Attorneys for Defendants LG Electronics, Inc.*
*and LG Electronics U.S.A., Inc.*

/s/      *Frank A. DeCosta*

Frank A. DeCosta III
Lead Attorney
Linda Jean Thayer
Ariana G. Woods
FINNEGAN HENDERSON FARABOW
GARRETT & DUNNER
901 New York Ave. NW
Washington, D.C. 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

~

55 Cambridge Parkway, 7th Floor
Cambridge, MA 02142
Telephone: (617) 452-1600
Facsimile: (617) 452-1666
linda.thayer@finnegan.com
frank.decosta@finnegan.com
ariana.woods@finnegan.com

Guy N. Harrison
GUY N HARRISON
P.O. Box 2845
Longview, TX 75606
Telephone: (903) 758-7361
Facsimile: (903) 753-9557
guy@gnhlaw.com

*Attorneys for Defendants Koninklijke Philips*
*Electronics N.V. and Phillips Electronics*
*North America Corporation*

/s/      *John M. Guaragna*
John M. Guaragna, Esq.
(Texas Bar No. 24043308)
DLA Piper LLP (US)
1221 South MoPac Expressway, Suite 400
Austin, TX 78746-6875
Telephone:  512-457-7000
Facsimile:  512-457-7001

Mark Fowler (CA Bar No. 1242235)
(*pro hac vice pending*)
Mark.Fowler@dlapiper.com
William G. Goldman (CA Bar No. 203630)
(*pro hac vice pending*)
William.goldman@dlapiper.com
Robert Buergi (CA Bar No. 242910)
(*pro hac vice pending*)
Robert.buergi@dlapiper.com
DLA PIPER LLP (US)
2000 University Avenue
East Palo Alto, CA 94303
Telephone: (650) 833-2000
Facsimile: (650) 833-2001

Michael E. Jones
State Bar No. 10929400
POTTER MINTON
A Professional Corporation
110 N. College, Suite 500 (75702)
P.O. Box 359
Tyler, Texas 75710
Telephone:   (903) 597-8311
Facsimile:  (903) 593-0846
mike.jones@potterminton.com

*Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

/s/      *Michael Summersgill*
William F. Lee
Michael J. Summersgill
Nathan R. Speed
WilmerHale LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Grant K. Rowan
Gregory H. Lantier
WilmerHale LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
william.lee@wilmerhale.com
michael.summersgill@wilmerhale.com
grant.rowan@wilmerhale.com
gregory.lantier@wilmerhale.com
nathan.speed@wilmerhale.com

David J. Beck
Michael Ernest Richardson
BECK REDDEN & SECREST LLP
1221 McKinney St., Suite 4500
One Houston Center
Houston, TX 77010-2020
Telephone: (713) 951-3700
Facsimile: (713) 951-3720
dbeck@brsfirm.com
mrichardson@brsfirm.com

*Attorneys for Defendants Pioneer Corporation and Pioneer Electronics (USA) Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing document and exhibits thereto were filed electronically on December 2, 2008 pursuant to Local Rule CV-5(a) and has been served on all counsel who have consented to electronic service.  Any other counsel of record will be served by first class U.S. mail, postage prepaid, on this same date.

/s/   *Benjamin Hershkowitz*

# EXHIBIT 1

LEXSEE

**SIG SWISS INDUSTRIAL CO. v. FRES-CO SYSTEM U.S.A., INC.**

**Civil Action No. 91-0699**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*1991 U.S. Dist. LEXIS 5452; 20 U.S.P.Q.2D (BNA) 1148*

**April 22, 1991**
**April 23, 1991, Filed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff corporation moved to dismiss defendant patent licensee's counterclaim for failure to join an indispensable party in plaintiff's action seeking a declaration that defendant's patent was invalid or non-infringed by plaintiff.

**OVERVIEW:** Plaintiff corporation sought a declaration that the patent of defendant patent licensee was invalid or non-infringed by plaintiff 's production of a particular valve. Defendant counterclaimed, alleging infringement. Plaintiff moved to dismiss the counterclaim for failure to join an indispensable party. The court ordered the dismissal of the counterclaim if defendant did not refile the counterclaim within 20 days with the patent assignee joined as a voluntary party. The court held that the patent assignee was an indispensable party, since it had an interest in any determination of the rights under the patent. In addition, plaintiff could be subject to multiple litigation if it prevailed on the counterclaim and the assignee decided it wanted to relitigate the infringement issue. The assignee's involuntary joinder was not feasible because the court would not have personal jurisdiction, since the assignee was a foreign corporation.

**OUTCOME:** The court ordered the dismissal of the counterclaim for failure to join an indispensable party if defendant did not refile the counterclaim within 20 days with the patent assignee joined as a voluntary party in the action.

**LexisNexis(R) Headnotes**

*Civil Procedure > Parties > Joinder > Necessary Parties*
[HN1] Joinder of parties is governed by *Fed. R. Civ. P. 19.*

*Civil Procedure > Jurisdiction > General Overview*
*Civil Procedure > Parties > Joinder > Necessary Parties*
[HN2] See *Fed. R. Civ. P. 19.*

*Civil Procedure > Parties > Joinder > Indispensable Parties*
*Civil Procedure > Parties > Joinder > Necessary Parties*
*Patent Law > Ownership > Conveyances > Licenses*
[HN3] Under *Fed. R. Civ. P. 19*, if a party is necessary and indispensable, the case should be dismissed.

*Civil Procedure > Parties > Joinder > Necessary Parties*
[HN4] A patent owner is an indispensable party in any case that disputes the validity and enforcement of a patent.

**COUNSEL:** [*1] SOL H. WEISS, NANCY L. GOLDSTEIN, ANAPOL, SCHWARTZ, WEISS & SCHWARTZ, Philadelphia, Pennsylvania. JEROLD I. SCHNIEDER, WASHINGTON, D.C., for Plaintiff.

JOHN S. ESTEY, MONTGOMERY, MC CRACKEN, WALKER & RHOADS, Philadelphia, Pennsylvania, BARRY A. STEIN, Philadelphia, Pennsylvania, for Defendant.

Case 2:08-cv-00316-DF-CE   Document 67   Filed 12/02/08   Page 22 of 31 PageID #:  235

Page 2

1991 U.S. Dist. LEXIS 5452, *1; 20 U.S.P.Q.2D (BNA) 1148

BARRY A. STEIN, Philadelphia, Pennsylvania, for Counter-Claimant.

SOL H. WEISS, ANAPOL, SCHWARTZ, WEISS & SCHWARTZ, Philadelphia, Pennsylvania, for Counter-Defendant.

**JUDGES:** James McGirr Kelly, United States District Judge.

**OPINION BY:** KELLY

**OPINION**

*MEMORANDUM AND ORDER*

Presently before this Court is the Motion of SIG Swiss Industrial Co. ("SIG") to Dismiss the Counterclaim for Failure to Join an Indispensable Party. For the following reasons, the motion will be granted.

I. Factual Background

SIG, a Swiss corporation, has produced a certain type of valve since 1983. Recently, FRES-CO System U.S.A., Inc. ("FRES-CO"), a Delaware corporation with its principal place of business in the Eastern District of Pennsylvania, has sued and threatened to sue SIG's customers for infringement of a patent of which FRES-CO is the exclusive United States/Canada licensee. SIG filed a declaratory judgment action to declare [*2] the patent invalid or non-infringed by SIG's production of this valve.

The patent at issue in this case has a complicated history. Luigi Goglio, an Italian citizen and resident, is the inventor of the patent product. He assigned all of his patent rights to a company called Crescent Holdings, N.V., a Netherlands Antilles corporation ("Crescent"). Crescent granted an exclusive license to make, use, or sell the patent product to its subsidiary, Flexible Packaging Research and Consulting Netherlands B.V. of Amsterdam ("Flexible"), a Netherlands corporation.

Flexible granted an exclusive sub-license for the United States and Canada to FRES-CO. Contained in the sub-license is a provision allowing FRES-CO to bring actions for infringement of the patent, if it asks Flexible and Crescent for permission first to allow them the opportunity to bring suit themselves. Crescent, although not a party to the Flexible/FRES-CO sub-license, explicitly approved of the transaction, as required in the Crescent/Flexible license.

After SIG filed this declaratory judgment action, FRES-CO filed a counterclaim for infringement of the patent against SIG, with prior permission from Crescent and Flexible. SIG now [*3] filed this motion to dismiss the counterclaim due to the absence of indispensable parties. These parties, according to SIG, are any of: Luigi Goglio, Luigi Goglio's other corporation Goglio Luigi Milano, S.p.A., and Crescent.

II. Analysis

[HN1] Joinder of parties is governed by *Federal Rule of Civil Procedure 19.* [HN2] *Rule 19* states,

(a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a [*4] plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

(b) *Determination by Court Whenever Joinder not Feasible.* If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be

Case 2:08-cv-00316-DF-CE   Document 67   Filed 12/02/08   Page 23 of 31 PageID #:  236

Page 3

1991 U.S. Dist. LEXIS 5452, *4; 20 U.S.P.Q.2D (BNA) 1148

lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

The rule has been more concisely described as questions of whether [*5] the party is 1) necessary and 2) indispensable. A party is necessary if it satisfies the factors in *Rule 19(a)* and a party is indispensable if it satisfies the factors in *Rule 19(b)*. [HN3] If the party is necessary and indispensable, the case should be dismissed.

Although the rules for joinder of parties in patent cases are somewhat tailored to the intricacies of patent law, the analysis is still based on *Rule 19*. The parties have cited cases that state that if an exclusive licensee is joined in a patent infringement action, the joinder of the patent owner is per se unnecessary. The cases cited by the parties, however, are cases that have been held by virtually all district courts in this Circuit to be inapposite to this situation since the revision of *Rule 19* in 1968. [1] These district court cases have held that the correct analysis to follow is the analysis set out in *Rule 19*.

> 1   The cases cited by the parties are *Waterman v. Mackenzie, 138 U.S. 252 (1892)* and *Hook v. Hook & Ackerman, 187 F.2d 52, 59 (3d Cir. 1951)*. These cases circumvented *Rule 19* altogether and looked first to see whether the exclusive license was really an assignment. The courts held that if the license is really an assignment, joinder of the original patent owner is unnecessary because the patent owner who has assigned all of his/her rights in a patent no longer has an interest in the outcome of the litigation. It remains true that joinder of the original patent owner is unnecessary if an assignment of all patent rights has occurred. See *Hook, 187 F.2d at 59*. Therefore, Luigi Goglio and his company no longer have any interest in the patent and do not have to be joined.

> Exclusive patent licenses are no longer presumptively assignments, however. In these types of patent license cases, then, it is necessary to engage in the *Rule 19* analysis and weigh as a factor whether an assignment has occurred. See, e.g., *Erbamont Inc. v. Cetus Corp., 720 F. Supp. 387 (D. Del. 1989)*; *Suprex Corp. v. Lee Scientific, Inc., 660 F. Supp. 89 (W.D. Pa. 1987)*;

*Tycom Corp. v. Redactron Corp., 380 F. Supp. 1183 (D. Del. 1974)*.

These cases have all held that an exclusive licensee is not an assignee if the licensor has retained any rights in the patent at all. In this case, Crescent and/or Flexible have retained several important rights, which leads to the conclusion that the sub-license to FRES-CO is not an assignment. In the license agreement between Crescent and Flexible, Crescent retains a right of first refusal for sublicense agreements into which Flexible desires to enter, Flexible must grant any royalty-free and non-exclusive licenses for improvements to the patent to Crescent, and Flexible must pay a 90% royalty to Crescent from sub-licenses. In the sub-license between Flexible and FRES-CO, Crescent and/or Flexible have a right of first refusal for any infringement lawsuits FRES-CO wishes to file, prior approval of all sub-licensees, and possible revocability of the license in situations other than when the patent expires (although that portion of the sub-license has been redacted as confidential). These types of rights have been held in all of the above cases to prevent an exclusive license from being an assignment. See *Erbamont, 720 F. Supp. at 393*; *Suprex, 660 F. Supp. at 91, 93*; *Tycom, 380 F. Supp. at 1185, 1187-88*. Therefore, the sub-license between FRES-CO, as well as the license between Crescent and Flexible, are not assignments.

[*6]   The case that began the new method of determining whether a party is indispensable in patent infringement actions is *Tycom Corp. v. Redactron Corp., 380 F. Supp. 1183 (D. Del. 1974)*. In that case, Tycom, the exclusive licensee of Holmes the patent owner, was suing Redactron for patent infringement. Redactron moved to dismiss the case for failure to join Holmes. Tycom had a provision in the license requiring it to sue promptly if it found infringement, and Holmes was required to join the action.

After lengthy analysis of why the prior line of Third Circuit cases were no longer applicable, the court concluded that Holmes was a necessary party because he was the title holder of the patent and he was entitled to half the proceeds of any infringement action. The court then concluded that because Redactron could be subject

Case 2:08-cv-00316-DF-CE   Document 67   Filed 12/02/08   Page 24 of 31 PageID #:  237

Page 4

1991 U.S. Dist. LEXIS 5452, *6; 20 U.S.P.Q.2D (BNA) 1148

to more litigation from Holmes, that Holmes was contractually required to be in the suit, and that Holmes could be collaterally estopped from arguing certain issues if he decided to sue later (i.e. for invalidity of the patent), Holmes was indispensable. See *id. at 1191*. The court dismissed the case, allowing Tycom to amend the [*7] complaint and join Holmes.

*Suprex Corp. v. Lee Scientific, Inc., 660 F. Supp. 89 (W.D. Pa. 1987)* is another case that sheds light on the proper analysis to take in this situation. Suprex, a Pennsylvania corporation, filed a declaratory action against Lee Scientific, a Utah corporation, and Brigham Young university (BYU), a Utah university, who were trying to enforce an allegedly invalid patent. The plaintiff sold a chromatograph to a third-party, and then was told by Lee Scientific that this sale violated Lee Scientific's license from BYU. In this case, Lee Scientific brought a motion claiming that the court did not have jurisdiction over BYU, and the case should be dismissed under Rules 12b7 and 19b.

BYU was the owner of the patent, and licensed it to Lee Scientific. The license gave the university the right to cancel the license for certain events, such as failure to exert best efforts to market, inability to meet demand, and insolvency. The license also had a provision allowing the university right of first refusal for lawsuits, except the cost of the suit could be taken out of the royalties due the university under the license.

The court held, following a similar [*8] case in the United States District Court for the Southern District of New York, that [HN4] the patent owner is an indispensable party in any case that disputes the validity and enforcement of the patent. Since the court did not have jurisdiction over BYU, it dismissed the case.

The court said, "As owner of the patent, the university claims an interest in the validity of the patent, an issue that permeates all four counts of the complaint. A determination by this court of invalidity of the patent, as a practical matter, impairs the university's ability to defend the patent in later litigation, due to collateral estoppel implications." Furthermore, the court stated that a judgment against the licensee of the patent would not be completely effective if the patent is considered invalid. Also, the threat of multiple litigation to Suprex was evident in this case, because the university could decide at a later date to sue Suprex if it were unhappy with the judgment. Finally, Suprex would not be prejudiced by

dismissal because it could refile in another court with jurisdiction over all the parties.

In the present case, Crescent, the assignee of all of the patent owner's rights, is clearly a necessary [*9] and indispensable party. Crescent is a necessary party because, as the assignee of the patent, it has an interest in any determination of the rights under the patent. Furthermore, SIG could be subject to multiple litigation if SIG prevails on the counterclaim and Crescent decides it would want to relitigate the infringement issue.

Crescent's involuntary joinder is not feasible because this Court would not have personal jurisdiction. Therefore, I must decide if Crescent satisfies the remainder of the definition of an indispensable party. The other factors delineated in Rule 19b are met in this situation, and therefore Crescent is an indispensable party.

First, a judgment finding the patent invalid would be prejudicial to Crescent, a prejudice that cannot be lessened by any action of this court. SIG could be prejudiced as well by the possibility mentioned above that if Crescent were unhappy with a finding of non-infringement, it may decide to file suit against SIG itself. The threat of multiple litigation to one of the parties is an important factor in deciding whether or not a case should be dismissed for lack of an indispensable party. Second, a judgment without Crescent may not be [*10] adequate, since Crescent is at least tantamount to, if not actually, the title-holder of the patent.

The only factor that weighs in favor of retaining the counterclaim in this case is that the final element, whether the "plaintiff" will have an adequate remedy if the action is dismissed for non-joinder, may not be satisfied. Because Crescent is a Netherland Antilles corporation, it is possible that one court may not have jurisdiction over SIG, Crescent, and FRES-CO. Therefore, FRES-CO may not be able to refile the counterclaim in another court. FRES-CO does have the right, as enunciated in its sub-license agreement with Flexible, to join Flexible as an involuntary party. Furthermore, in the license between Crescent and Flexible, Crescent covenanted that it would "render without any cost, such assistance and disclose such information to [Flexible] as shall [be] required to carry out its obligations under such sublicense agreements as [Flexible] shall enter into." License, at 8, para. 9. Crescent also covenanted that it would "hold [Flexible]

harmless with respect to any legal proceedings against [Flexible] on the grounds of any alleged infringement of such patents as are licensed under [*11] this Agreement." License, at 8, para. 10. Therefore, if Flexible is involuntarily joined in an action by FRES-CO, Crescent would be obligated to render assistance to Flexible in the action. This assistance could conceivably be voluntarily submitting to the jurisdiction of a foreign court. The final factor, then, would probably not be prejudicial to FRES-CO. [2]

> 2   The only cases that did not dismiss a claim because the "plaintiff" could not refile the case in another court due to jurisdictional problems had significantly smaller threats of multiple litigation for the defendants. In those cases, the absent parties signed waivers pledging not to bring suit against the defendants or their customers over the issues presented in the litigation before the court. See *Erbamont Inc. v. Cetus Corp., 720 F. Supp. 387, 395-96 (D. Del. 1989); Howes v. Medical Components, Inc., 698 F. Supp. 574, 579 (E.D. Pa. 1988); Catanzaro v. International Telephone & Telegraph Corp., 378 F. Supp. 203, 207-09 (D. Del. 1974).*

[*12] III. Conclusion

The risk of multiple litigation to SIG if this counterclaim is allowed to progress is significant. Having balanced this consideration with the possible prejudice to FRES-CO if the counterclaim is dismissed, I am of the opinion that this counterclaim should be dismissed for failure to join an indispensable party. If FRES-CO joins Crescent as a third-party defendant and Crescent voluntarily submits to the jurisdiction of this Court, the counterclaim does not have to be dismissed. An appropriate order follows.

ORDER

AND NOW, this 22 day of April, 1991, in consideration of the Motion of Plaintiff SIG SWISS Industrial Co. to Dismiss the Counterclaim for Failure to Join an Indispensable Party and the Response of the Defendant thereto, and in accordance with the foregoing Memorandum of Law, it is hereby ORDERED that:

1) The Defendant FRES-CO System U.S.A., Inc. ("FRES-CO") has twenty (20) days from the date of this Order to refile the Counterclaim with Crescent Holdings, N.V. joined as a party in this action, voluntarily submitting to the jurisdiction of this Court;

2) If Defendant FRES-CO does not refile within 20 days of the date of this Order the Counterclaim [*13] with Crescent Holdings, N.V. joined as a party in this case, voluntarily submitting to the jurisdiction of this Court, the Counterclaim of FRES-CO shall be dismissed without further action of the Court.

# EXHIBIT 2

Westlaw.

Slip Copy                                                                                    Page 1
Slip Copy, 2008 WL 725189 (E.D.Wis.)
(Cite as: 2008 WL 725189 (E.D.Wis.))

C
Only the Westlaw citation is currently available.
United States District Court, E.D. Wisconsin.
Todd E. BUSHBERGER, Plaintiff,
v.
PROTECTO WRAP COMPANY, Defendant.
**No. 07-CV-8.**

March 17, 2008.

William A. Rinehart, David G. Hanson, Reinhart Boerner Van Deuren SC, Milwaukee, WI, Paul A. Piaskoski, Paul Piaskoski LLC, Franklin, WI, for Plaintiff.

Christopher J. Hussin, Kenneth B. Axe, Lathrop & Clark, Madison, WI, Paul S. Cha, Robert R. Brunelli, Scott R. Bialecki, Sheridan Ross PC, Denver, CO, for Defendant.

## ORDER

J.P. STADTMUELLER, District Judge.

*1 Plaintiff Todd E. Bushberger ("Bushberger") filed suit against defendant Protecto Wrap Company ("PWC") alleging patent infringement. PWC filed a motion to dismiss for lack of subject matter jurisdiction contending that Bushberger does not own 100% of the asserted patents. PWC also filed a motion for a preliminary injunction seeking to restrain Bushberger from stating that PWC could no longer lawfully sell the allegedly infringing products. In an order dated May 1, 2007, the court stayed this case in response to a stipulation filed by the parties so that they could engage in settlement discussions. After three extensions, the stay was set to expire on July 16, 2007. Apparently unsuccessful in their settlement negotiations, the parties resumed briefing the pending motions in August. The court will order the stay lifted; however, for the reasons set forth below, the court is obliged to dismiss this action for lack of subject matter jurisdiction.

## BACKGROUND

PWC manufactures waterproofing membranes for the construction industry including flashing tapes, house wrap materials, and flooring, tile, and roofing underlayments. John Hopkins ("Hopkins") is a substantial shareholder and the chief executive officer of PWC. In early 2001, Hopkins met Bushberger at a trade show where they began discussing the possibility of forming a business and the potential for Bushberger to begin employment at PWC. As a result of these discussions, Hopkins and Bushberger eventually agreed to form a corporation which would license construction-related inventions to PWC. In addition, in January 2002, Bushberger began working for PWC as its Midwest sales manager and as a construction consultant. PWC asserts that Hopkins and Bushberger conceived of the inventions licensed to PWC, a building foundation seal and a self-adhesive insulating and protective barrier product for building foundations, during discussions where Hopkins added substantial content to Bushberger's original concepts. (Hopkins Decl. ¶ 4.) Bushberger, however, contends that he was the sole inventor of the products.

Hopkins and Bushberger discussed possible ways in which to commercialize the foundation seal, Triple-Guard™, and the self-adhesive insulating and protectant products, ProtectoBond™. In June 2002, Hopkins and Bushberger signed an LLC Operating Agreement (the "2002 Agreement") to create Bushkins, LLC ("Bushkins"). According to the agreement, Bushkins was to own and manage the patent applications for the inventions, Hopkins was to pay Bushberger up to $30,000 to cover the cost of patent prosecution and the cost of forming Bushkins, and Bushberger was to assign the patent applications to Bushkins. Bushberger, however, did not file the articles of incorporation with the Wisconsin Secretary of State office to form Bushkins. Bushberger states he did not file the documents because he was waiting for the parties to sign a licensing agreement. Bushberger also did not assign his rights in and to the patent applications to Bushkins.

Hopkins paid Bushberger the $30,000 required under the agreement.

**\*2** The patents, U.S. Patent No. 6,546,679 ("the '679 patent") and U.S. Patent No. 6,578,332 ("the '332 patent"), issued in the spring of 2003. The '679 patent includes eight claims and the '332 patent includes ten claims. The patents list Bushberger as the sole inventor and neither patent has been assigned to Bushkins by Bushberger. Hopkins states that he told Bushberger that PWC would not enter a license to the '679 and '332 patents until the operating agreement clearly indicated that Hopkins was a 50% owner of both patents. It is undisputed that Hopkins invented at least the subject matter recited in claim 7 of both patents; however, Bushberger asserts he properly disclaimed claim 7 of the '332 patent. PWC asserts that the disclaimer is inoperative to divest Hopkins of his legal rights.

PWC states that Bushberger and Hopkins signed a new Bushkins operating agreement in December 2003 (the "2004 Agreement"). (Hopkins Decl. Ex. 5.) Pursuant to section 2.1 of that agreement:

> John Hopkins, for consideration of 50% of Bushkins LLC and 50% of all patent ownership present or future, agrees to pay up to $30,000 for the initial patent applications and expenses incurred including attorney's fees pertinent to LLC. The actual bills need to be submitted to John Hopkins after the LLC Agreement is signed. Future expenses beyond the $30,000 will be paid for out of the LLC profit to be borne equally by both parties 50-50.

(Hopkins Decl. ¶ 9, Ex. 5 § 2.1.) Bushkins was registered as a Wisconsin domestic limited liability company in May 2004.

Bushberger disputes the existence of the 2004 Agreement. According to Bushberger, Hopkins contacted Bushberger in 2003 stating that Hopkins could not locate his master copy of the 2002 Agreement, and that Hopkins requested Bushberger to sign new original copies of the 2002 Agreement.

Bushberger states that before he signed the documents that Hopkins sent to him, he reviewed them and confirmed that the new documents contained the same material terms as the 2002 Agreement that Bushberger had previously signed. (Bushberger Dep. 164-70, 174-77.) Bushberger states that he was never presented with the terms quoted above, section 2.1 of the 2004 Agreement, and that he did not sign any copy of the 2004 Agreement. (*Id.*) Bushberger asserts that any signature of his affixed to a copy of the 2004 Agreement was procured by deceit and fraud.(*Id.*)

In 2004, Hopkins signed on behalf of PWC a license with Bushkins. Between 2004 and 2006, PWC paid Bushkins more than $270,000 in royalties under that license. All profits generated by Bushkins, approximately $230,000, have been paid to Bushberger. Bushberger terminated PWC's license with Bushkins, effective January 1, 2007, and filed his complaint in this action on January 3, 2007, alleging PWC infringed the '332 and '679 patents.

## ANALYSIS

PWC asserts that Bushberger's complaint should be dismissed for lack of subject matter jurisdiction because Hopkins is a co-owner of the '679 and ' 332 patents by both assignment from Bushberger and operation of patent law. Pursuant to the holding in *Israel Bio-Eng'g Project v. Amgen, Inc.,* 475 F.3d 1256 (Fed.Cir.2007), all co-owners of a patent must join all the other co-owners of that patent to establish legal standing to sue for infringement of the patent. *Id.* at 1264.PWC argues that this case must be dismissed because Bushberger is not the sole owner of the patents, and neither Hopkins nor PWC agree to voluntarily join as a plaintiff in Bushberger's infringement action against PWC. *See id.*("With certain exceptions not applicable here, one co-owner has the right to limit the other co-owner's ability to sue infringers by refusing to join voluntarily in the patent infringement suit.").

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2008 WL 725189 (E.D.Wis.)
**(Cite as: 2008 WL 725189 (E.D.Wis.))**

**\*3** Standing to sue is a threshold jurisdictional requirement in every federal action. *Sicom Sys., Ltd. v. Agilent Techs., Inc.,* 427 F.3d 971, 975 (Fed.Cir.2005). In considering the motion to dismiss, the court must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor. *Transit Express, Inc. v. Ettinger,* 246 F.3d 1018, 1023 (7th Cir.2001). When considering a Rule 12(b)(1) motion challenging the factual basis for subject matter jurisdiction, district courts look beyond the pleadings and consider all competent evidence. *Hay v. Indiana State Bd. of Tax Comm'rs,* 312 F.3d 876, 879 (7th Cir.2002). "[W]here standing is challenged as a factual matter, the plaintiff bears the burden of supporting the allegations necessary for standing with 'competent proof.' " *Retired Chicago Police Ass'n v. City of Chicago,* 76 F.3d 856, 862 (7th Cir.1996). "Competent proof" requires a showing by a preponderance of the evidence that standing exists. *Perry v. Arlington Heights,* 186 F.3d 826, 829 (7th Cir.1999); *Meridian Sec. Ins. Co. v. Sadowski,* 441 F.3d 536, 543 (7th Cir.2006) ("a proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence."). PWC raises two arguments to support its claim that Hopkins has an ownership interest in the two patents at issue. First, although Bushberger is listed as the sole inventor of the patents, PWC asserts that Bushberger assigned a 50% interest in and to the '679 and '332 patents to Hopkins through the 2004 Agreement. *See* 35 U.S.C. § 261 ("patents, or any interest therein, shall be assignable in law by an instrument in writing."). Second, PWC notes that an inventor of one claim of a patent enjoys ownership of a pro rata undivided interest in the entire patent. *See Ethicon, Inc. v. United States Surgical Corp.,* 135 F.3d 1456, 1465 (Fed.Cir.1998) ("in the context of joint inventorship, each co-inventor presumptively owns a pro rata undivided interest in the entire patent, no matter what their respective contributions."). Here, it is undisputed that Hopkins is an inventor of the subject matter of at least claim 7 of the '679 and '332

patents. (Hopkins Dec., ¶ 8; Bushberger Dep. 186, 190.) Therefore, PWC asserts, Hopkins owns an undivided interest in the patents, and because Hopkins will not join as a party plaintiff in this action, Bushberger's complaint must be dismissed for lack of standing. *See Israel Bio-Eng'g Project,* 475 F.3d at 1264.

In response, Bushberger raises three arguments to support his claim that he is the sole owner of both the patents at issue. First, Bushberger argues that he should not be bound to the terms of the 2004 Agreement because, as noted above, Bushberger claims he was never presented with the terms of the 2004 Agreement that provided for the assignment of a 50% interest in and to the '679 and ' 332 patents to Hopkins. (Bushberger Dep. 164-70, 174-77.) Bushberger contends that he never signed the 2004 Agreement; rather, he states he signed a new original copy of the 2002 Agreement. (*Id.*)

**\*4** Second, Bushberger argues that Hopkins's contributions to the patents were "merely material selections and obvious embodiments of the inventions conceived solely by Bushberger."(Pl.'s resp. Br. 5.) Hopkins states he contributed the adhesive coating which is covered by a release strip to the lower surface of the strip, as claimed in claim 7 of the '332 patent, and that he contributed forming the first layer of a "ter polymer acrylic resin having a textured surface" as claimed in claim 7 of the '679 patent. (Bushberger Dep. 186; Hopkins Decl. ¶ 8.) Bushberger contends that, with respect to the '332 patent, the use of an adhesive to attach building parts together was well known in the art, and, therefore, any subject matter added to the '332 application by Hopkins was merely obvious modifications to Bushberger's invention. And with respect to claim 7 of the '679 patent, Bushberger contends that the use of a "ter polymer acrylic resin" was an obvious selection of material to make the manufacturing process more efficient. Therefore, Bushberger asserts, any contributions by Hopkins were merely obvious contributions that do not support Hopkins's claim of inventorship. *See Ethicon,* 135 F .3d at

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

1460 ("One who simply provides the inventor with well-known principles or explains the state of the art without ever having a firm and definite idea of the claimed combination as a whole does not qualify as a joint inventor.") (internal quotation omitted).

Third, Bushberger asserts that, prior to commencement of this action, he properly disclaimed claims 7, 9, and 10 of the '332 patent pursuant to 35 U.S.C. § 253. (Hopkins Decl. Ex. 4.) Therefore, Bushberger asserts, Hopkins has no basis for his claim of inventorship to that patent. *See Vectra Fitness, Inc. v. TNWK Corp.,* 162 F.3d 1379, 1383-84 (Fed.Cir.1998) (patentee may make disclaimer of any complete claim).

As noted above, the parties dispute many of the facts regarding ownership of the patents. Specifically, the parties dispute the creation of the 2004 Agreement assigning 50% of the patents to Hopkins, Hopkins's contributions to the inventions, and Bushberger's ability to disclaim any claims of the patents to which Hopkins contributed. In light of these disputed facts relevant to subject matter jurisdiction, Bushberger was required to show by a preponderance of the evidence that standing existed. *See Meridian Sec. Ins.,* 441 F.3d at 543. Bushberger presented his affidavit, exhibits, and deposition testimony to support his position that he never signed the 2004 Agreement assigning 50% of the patents to Hopkins, and evidence to support his position that he properly disclaimed claims 7, 9, and 10 of the '332 patent prior to commencement of this suit. After considering the evidence submitted by the parties to support their respective positions, and given the substantial disparities in the parties' portrayals of the relevant facts, the court would be required to make a credibility determination at a pretrial evidentiary hearing in order to resolve these disputed questions of fact regarding standing. *See Bischoff v. Osceola County,* 222 F.3d 874, 879 (11th Cir.2000) ("a district court *cannot* decide disputed factual questions or make findings of credibility essential to the question of standing on the pa-

per record alone but *must* hold an evidentiary hearing.") (emphasis in original); *Linnemeir v. Ind. Univ.-Purdue Univ. Fort Wayne,* 155 F.Supp.2d 1044, 1050 (N.D.Ind.2001) ("when faced with standing issues, courts are required to hold an evidentiary hearing to determine disputed factual issues."). However, the court concludes that such an evidentiary hearing is unnecessary here because the undisputed facts show that Hopkins conceived of the subject matter in claim 7 of the '679 patent.

*5 In a case alleging patent infringement, the patent owner has standing to sue. *Sicom Sys., Ltd.,* 427 F.3d at 976. However, if there are co-owners, each must join in the action. *Israel Bio-Eng'g Project,* 475 F.3d at 1264 (citing *Ethicon, Inc.,* 135 F.3d at 1460)."It is a bedrock tenet of patent law that an invention presumptively belongs to its creator."*Id.* at 1263 (internal quotation omitted). Therefore, the named inventor of a patent is the presumptive owner. *Ethicon, Inc.,* 135 F.3d at 1460. However, an alleged co-inventor can prove his or her contribution to the conception of a claim "by clear and convincing evidence," which may include corroborative evidence such as "oral testimony of someone other than the alleged inventor...." *Id.* at 1461 (citing *Price v. Symsek,* 988 F.2d 1187, 1195-96 (Fed.Cir.1993)).

Here, Bushberger is the named inventor of the patents; however, he testified at his deposition that Hopkins conceived of the subject matter of claim 7 of the '679 patent. (Bushberger Dep. 186, 190.) Hopkins states that he invented at least the subject matter of claim 7 of the '679 patent, and it is undisputed that Bushberger did not attempt to disclaim claim 7 of the '679 patent. (Hopkins Decl. ¶ 8; Bushberger Dep. 190.) Bushberger argues that Hopkins's contributions to the '679 patent were merely obvious material selections, not deserving of joint inventor status. However, the fact that Bushberger included the subject matter of claim 7 in the '679 patent suggests that it was a significant contribution, and, more importantly, that subject matter is presumed to be both novel and nonobvious under

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy, 2008 WL 725189 (E.D.Wis.)
(Cite as: 2008 WL 725189 (E.D.Wis.))

the presumption of validity established by 35 U.S.C. § 282. *See* 35 U.S.C. § 282 ("Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims"). Bushberger also alleges that the use of the "ter polymer acrylic resin" was conceived by a company Hopkins was working with, not Hopkins, but Bushberger submitted no evidence other than his own testimony to support this claim. (Bushberger Dep. 188.)

A co-inventor need not make a contribution to every claim of a patent. *See* 35 U.S.C. § 116. "A contribution to one claim is enough." *Ethicon,* 135 F.3d at 1460 (citing *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.,* 859 F.2d 878, 888 (Fed.Cir.1988)). Given Hopkins's undisputed contribution to claim 7 of the '679 patent, Hopkins must be considered a joint inventor of that patent and, thus, an owner of that patent. *See id. at 1460-61.* In light of this undisputed contribution, the court cannot conclude that Bushberger has shown by a preponderance of the evidence that he was the sole owner of the patents. *See Meridian Sec. Ins., 441 F.3d at 543.* Without complete ownership interest of the patents or the voluntary joinder of Hopkins, Bushberger lacks standing to sue for infringement. *See Israel Bio-Eng'g Project, 475 F.3d at 1264.* Therefore, because neither Hopkins nor PWC agree to voluntarily join as a plaintiff in this action, Bushberger's complaint must be dismissed for lack of subject matter jurisdiction. *See id.* ("one co-owner has the right to limit the other co-owner's ability to sue infringers by refusing to join voluntarily in the patent infringement suit.").

**\*6** Also before the court, PWC filed a motion for a preliminary injunction seeking to restrain Bushberger from stating that PWC may no longer lawfully sell the allegedly infringing products. To prevail on its motion for preliminary injunctive relief, PWC must first prove that it has some likelihood of succeeding on the merits if its claims. *See Abbott Laboratories v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir.1992). The motion must be denied as

moot because PWC has not formally filed any claim or counterclaim in this action, and, as noted above, this action must be dismissed for lack of subject matter jurisdiction. PWC is free to file its false advertising and unfair competition claims and motion for a preliminary injunction in a separate action.

Accordingly,

**IT IS ORDERED** that the stay issued by order dated May 1, 2007, be and the same is hereby **LIFTED;**

**IT IS FURTHER ORDERED** that the defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) (Docket # 18) be and the same is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that the defendant's motion for a preliminary injunction (Docket # 22) be and the same is hereby **DENIED** as moot;

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED** for lack of subject matter jurisdiction.

The clerk of court is directed to enter judgment accordingly.

E.D.Wis.,2008.
Bushberger v. Protecto Wrap Co
Slip Copy, 2008 WL 725189 (E.D.Wis.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.